IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

CASE NO.

GASFORD GOLAUB,

   Plaintiff,

vs.

CDK GLOBAL LLC,

   Defendant.

_____/

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff, GASFORD GOLAUB ("Mr. Golaub"), by and through his undersigned counsel, hereby files this Complaint against Defendant, CDK GLOBAL, LLC ("CDK"), for discriminating against him on the basis of his race in violation of Title VII of the Civil Rights Act of 1964 as amended ("Title VII"), 42 U.S.C. § 1981 ("Section 1981"), and the Florida Civil Rights Act ("FCRA"). In support of his complaint, Mr. Golaub asserts the following:

**JURISDICTION AND VENUE**

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §1331. This action is authorized and instituted pursuant to Sections 706(f)(1) and (3) of Title VII, Section 1981, and the FCRA.

2. Venue is proper because Mr. Golaub resides in Broward County, Florida, and a substantial part of the events giving rise to the violations alleged herein occurred in Broward

County, Florida, which is within the jurisdiction of the U.S. District Court for the Southern District of Florida, Fort Lauderdale Division.

## THE PARTIES

3. Mr. Golaub is a resident of Broward County, Florida, over the age of eighteen, otherwise sui juris in all respects, and worked for CDK as its employee at all material times hereto.

4. Mr. Golaub is a Black man. As such, he is a member of a protected group because of his race.

5. CDK is a foreign limited liability company that is registered to do business in Fort Lauderdale, Florida, with its principal place of business located at 1950 Hassell Road, Hoffman Estates, Illinois 60169, and at all material times hereto was conducting business in the State of Florida.

## CONDITIONS PRECEDENT

6. More than thirty (30) days prior to the initiation of this lawsuit, Mr. Golaub filed a Charge of Discrimination with the EEOC alleging that CDK discriminated against him by violating the laws under which he now seeks relief.

7. On June 10, 2024, the EEOC issued a Letter of Determination stating it "will not proceed further with its investigation and makes no determination about whether further investigation would establish a violation of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes."

8. All conditions precedent to the institution of this lawsuit have been fulfilled.

## FACTUAL ALLEGATIONS

9. Mr. Golaub was hired by CDK on November 17, 2014, to work as a Digital Solutions Manager.

10. Sometime in 2015 or 2016, Mr. Golaub applied for an open Account Sales Executive ("ASE") position at CDK and was hired for the role.

11. For years, Mr. Golaub, as an ASE, demonstrated success earning multiple President's Club Awards and never missing quota. Based on internal data, he was 163% of plan versus goal on a 5-year average. There is no doubt that he was successful at his job, and importantly, he was always a team player.

12. In November 2022, a Regional Sales Executive ("RSE") position became available in Mr. Golaub's territory, after Mr. Golaub's supervisor, Jim Verity, who is White, was promoted into a Director of Sales position.

13. Like Mr. Golaub, Mr. Verity had been with CDK for many years and so when he was promoted, Mr. Golaub believed he could easily transition into the RSE role because he was well qualified for the position.

14. The ASE and RSE positions have nearly identical job duties, the main difference being that an RSE earns more base salary and has larger accounts than an ASE. The job descriptions are otherwise the same.

15. Mr. Golaub applied for the open RSE position and was initially interviewed by Mr. Verity who told Mr. Golaub that he would be great in the role because he knew the business and the accounts. He shared with Mr. Golaub that he saw this as a natural progression for him and

thereafter passed Mr. Golaub on to the second round of the interview process with Mike Heniff, the Vice-President of Sales, South Region, at CDK, who is also White.

16. On December 27, 2022, Mr. Golaub interviewed with Mr. Heniff. At the time, Mr. Golaub was headed out of the country on a pre-scheduled vacation, so he made sure to accommodate Mr. Heniff's schedule for the interview. This was also a big opportunity for Mr. Golaub who very much wanted the new role, which would have given him the opportunity to work with larger accounts and earn more income.

17. During the interview, Mr. Heniff noted that Mr. Golaub was qualified for the position, that Mr. Golaub's team had been a top team in the company for many years, and that he would like Mr. Golaub to move on to the next round of interviews.

18. Mr. Heniff also told Mr. Golaub that he did not see any difference between the ASE and RSE roles, which Mr. Golaub felt was a strange comment to make during the interview given that he was an ASE interviewing for an RSE position. Mr. Golaub nonetheless agreed, because he knew the job duties of the two positions were virtually identical and that he was qualified for the RSE position.

19. Mr. Golaub was then assured no decision would be made on filling the position until he returned from his vacation and that he would be able to schedule the next round of interviews when he returned.

20. On January 6, 2023, while Mr. Golaub was still on vacation, he received an email stating that Mr. Verity and Mr. Heniff made the decision to change the open position to an ASE one to "better suit the needs of the business." Mr. Golaub was told the compensation for the position and asked if he was still interested in the opportunity.

21. Although Mr. Golaub thought it was odd since Mr. Verity's position still needed to be filled, he said yes and reached out to Mr. Verity to inquire about what happened and the open position but received no response from him.

22. A few days later, on January 9, 2023, Mr. Golaub noticed a calendar appointment for a regional call with Mike Heniff. He accepted the appointment thinking it would be a routine call, unrelated to the open position.

23. During the call, with the entire South Region in attendance, to Mr. Golaub's shock and surprise, Mr. Heniff announced that an offer had been extended for the position vacated by Mr. Verity and that he was confident the offer would be accepted by the applicant. Mr. Golaub's colleagues on the call were also shocked and surprised upon hearing the announcement and inquired with Mr. Golaub if he had withdrawn his application for the role because they knew Mr. Golaub was qualified for the position and believed the transition made sense given Mr. Golaub's tenure and qualifications for the position.

24. After the regional call, Mr. Verity personally reached out to Mr. Golaub and apologized saying that he did not know Mr. Heniff was going to make that announcement about the RSE position. Mr. Verity told Mr. Golaub the decision to change the position to an ASE one was made that morning and since Mr. Golaub was already an ASE, he was not given the opportunity.

25. However, Mr. Golaub knew from the January 6, 2023, email that what Mr. Verity told him was not true, as the decision to change the position to an ASE one was made well before the regional call that morning.

26. Later, Mr. Golaub learned the position was offered to Joe Floro, who is White, from CDK's Inside Sales team, located in Chicago. Mr. Floro did not have the longevity in the business, was not even located in Florida, and his prior role was not direct business to business. In other words, Mr. Floro was not as qualified as Mr. Golaub for the open position.

27. Mr. Floro was offered a $75,000 base salary, and since he lives in Chicago, he was also offered "relocation assistance" (making the base salary closer to the RSE base salary).

28. Several weeks later, Mr. Floro rescinded his acceptance and Mr. Verity asked Mr. Golaub to oversee some of the accounts that were previously assigned to him but were scheduled to be transferred to Mr. Floro once he started working. Mr. Golaub, being a team player, agreed.

29. Once Mr. Golaub had access to the accounts, he realized those accounts to be assigned to Mr. Floro (and previously to Mr. Verity) were much more lucrative than the accounts assigned to him, which would be typical with an RSE position. Mr. Golaub asked Mr. Verity if he would be keeping any of the accounts he was asked to service until a replacement was hired and was told by him, "we'll see."

30. While Mr. Golaub continued to service the accounts temporarily assigned to him, it was obvious that he would not be allowed to keep any of the more lucrative accounts that were previously assigned to Mr. Verity and slated for Mr. Floro as those would be assigned to the new "ASE" replacing Mr. Verity, which would not be Mr. Golaub.

31. Frustrated by the failure to promote him into a role for which he was more than qualified after years of hard work at CDK, Mr. Golaub resigned from his position.

32. While CDK may claim it did not hire Mr. Golaub to fill the position vacated by Mr. Verity for legitimate business reasons, the real reason Mr. Golaub was not offered the position

is because he is Black, and the position was changed from an RSE role to an ASE role to justify the discrimination hoping Mr. Golaub would not continue the interview process since he was already an ASE.

33.     As noted, there is virtually no distinction between the two roles (ASE and RSE), but the RSE role has a higher base salary and more lucrative earning potential due to the accounts assigned to the RSEs. If Mr. Golaub was qualified to serve as an ASE, he was qualified to serve as an RSE, especially after nine (9) years in an ASE role where he had been very successful, always earning well over quota.

34.     Of significance, during Mr. Golaub's nine-year tenure, other ASEs had been promoted, including Mr. Igor Sapoznik, who started at the same time as Mr. Golaub. Mr. Sapoznik is White and was promoted to an RSE position in late 2021 or early 2022.

35.     Mr. Heniff's son, Matthew Heniff, who is also White, started working at CDK in 2018, about four (4) years after Mr. Golaub. Matthew Heniff started as an ASE and then decided that sales was not for him and went into a support role in Performance Management. Then in 2021, Matthew Heniff was promoted to an RSE position, around the same time Mike Heniff and Jim Verity were negotiating a deal for stores that became a part of Matthew Heniff's new territory.

36.     There are seventeen (17) RSEs in the entire company and none are Black.

37.     There are also approximately twenty (20) Director of Sales positions, and none of them are filled by someone who is Black. There are also no Regional Vice-Presidents that are Black.

38.     Not only was Mr. Golaub denied a promotion because he is Black, but he has been denied equal opportunities to earn the same income as his White counterparts, a fact of which he

became painfully aware of when he was asked to temporarily cover certain accounts previously handled by Mr. Verity that were slated to become Mr. Floro's accounts when he took over the "ASE" role vacated by Mr. Verity.

39. Through the years, Mr. Golaub has had deals shut down for varying reasons, but later learned that when similar deals were presented by his White counterparts, they were approved. Even the White ASEs in the South Region have much more lucrative opportunities when compared to Mr. Golaub.

40. Mr. Golaub's biggest assigned dealer had eight (8) stores, but the biggest accounts assigned to some of his White colleagues have between nineteen (19) to twenty-eight (28) stores, which provides them with significantly more earning potential.

41. No doubt, Mr. Golaub was discriminated against by CDK based on his race and treated differently than his similarly situated White colleagues.

**COUNT I – VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964**
**DISCRIMINATION ON THE BASIS OF RACE (DISPARATE TREATMENT)**

42. Mr. Golaub re-alleges and re-affirms the allegations contained in paragraphs 1 through 41 as if fully set forth herein.

43. Mr. Golaub is Black, and he is therefore a member of a protected class.

44. Title VII outlaws employment discrimination because of "race, color, religion, sex, or national origin."

45. CDK treated Mr. Golaub adversely by denying him equal opportunities and paying him less than his White, similarly situated colleagues, as outlined above.

46. Mr. Golaub has been denied equal opportunities to earn the same income as his White counterparts because he is Black, as shown by the difference in the accounts he was assigned when compared to his similarly situated White colleagues.

47. Mr. Golaub was qualified for the ASE and RSE roles, and he should have been assigned comparable accounts to his similarly situated White colleagues.

48. CDK knew or should have known of the racial discrimination perpetuated and condoned against Mr. Golaub and failed to take prompt, adequate and remedial action or took no action at all to prevent the unlawful abuses to Mr. Golaub.

49. CDK knowingly condoned and ratified the discrimination.

50. The discrimination complained of herein, affected a term, condition, or privilege of Mr. Golaub's continued employment with CDK.

51. CDK's conduct and failures constitute intentional discrimination and unlawful employment practices based on race in violation of the laws applicable to this action.

52. As a direct and proximate result of CDK's conduct described herein, Mr. Golaub has suffered emotional distress, mental pain and suffering, past and future pecuniary losses, inconvenience, mental anguish, loss of enjoyment of life and other non-pecuniary losses, along with lost back and front pay, interest on pay, benefits, bonuses, commissions, and other tangible and intangible damages. These damages occurred in the past yet are permanent and continuing.

**COUNT II – VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 DISCRIMINATION ON THE BASIS OF RACE (FAILURE TO PROMOTE)**

53. Mr. Golaub re-alleges and re-affirms the allegations contained in paragraphs 1 through 41 as if fully set forth herein.

54. Mr. Golaub is Black, and he is therefore a member of a protected class.

55. Title VII outlaws employment discrimination because of "race, color, religion, sex, or national origin." 42 U.S.C. §2000e-2(a)(1).

56. CDK treated Mr. Golaub adversely by failing to promote Mr. Golaub and denying him equal opportunities to earn the same income as his similarly situated White counterparts as outlined above.

57. Mr. Golaub was qualified for the RSE position as he served as an ASE for nine (9) years, earned above quota, led his team to be a top team in the company for many years, and both Mr. Verity and Mr. Heniff interviewed Mr. Golaub for the RSE role and agreed he was qualified.

58. CDK knew or should have known of the racial discrimination perpetuated and condoned against Mr. Golaub and failed to take prompt, adequate and remedial action or took no action at all to prevent the unlawful abuses to Mr. Golaub, including hiring Mr. Floro, who is White and was less qualified than Mr. Golaub.

59. CDK knowingly condoned and ratified the discrimination.

60. The discrimination complained of herein, affected a term, condition, or privilege of Mr. Golaub's continued employment with CDK.

61. CDK's conduct and failures constitute intentional discrimination and unlawful employment practices based on race in violation of the laws applicable to this action.

62. As a direct and proximate result of CDK's conduct described herein, Mr. Golaub has suffered emotional distress, mental pain and suffering, past and future pecuniary losses, inconvenience, mental anguish, loss of enjoyment of life and other non-pecuniary losses, along with lost back and front pay, interest on pay, benefits, bonuses, commissions, and other tangible and intangible damages. These damages occurred in the past yet are permanent and continuing.

## COUNT III – VIOLATION OF FLORIDA CIVIL RIGHT'S ACT DISCRIMINATION ON THE BASIS OF RACE (DISPARATE TREATMENT)

63. Mr. Golaub re-alleges and re-affirms the allegations contained in paragraphs 1 through 41 as if fully set forth herein.

64. Mr. Golaub is Black, and he is therefore a member of a protected class.

65. The FCRA outlaws employment discrimination because of "race, color, religion, sex, or national origin."

66. CDK treated Mr. Golaub adversely by denying him equal opportunities and paying him less than his White, similarly situated colleagues, as outlined above.

67. Mr. Golaub has been denied equal opportunities to earn the same income as his White counterparts because he is Black, as shown by the difference in the accounts he was assigned when compared to his similarly situated White colleagues.

68. Mr. Golaub was qualified for the ASE and RSE roles, and he should have been assigned comparable accounts to his similarly situated White colleagues.

69. CDK knew or should have known of the racial discrimination perpetuated and condoned against Mr. Golaub and failed to take prompt, adequate and remedial action or took no action at all to prevent the unlawful abuses to Mr. Golaub.

70. CDK knowingly condoned and ratified the discrimination.

71. The discrimination complained of herein, affected a term, condition, or privilege of Mr. Golaub's continued employment with CDK.

72. CDK's conduct and failures constitute intentional discrimination and unlawful employment practices based on race in violation of the laws applicable to this action.

73. As a direct and proximate result of CDK's conduct described herein, Mr. Golaub has suffered emotional distress, mental pain and suffering, past and future pecuniary losses, inconvenience, mental anguish, loss of enjoyment of life and other non-pecuniary losses, along with lost back and front pay, interest on pay, benefits, bonuses, commissions, and other tangible and intangible damages. These damages occurred in the past yet are permanent and continuing.

## COUNT IV – VIOLATION OF FLORIDA CIVIL RIGHT'S ACT DISCRIMINATION ON THE BASIS OF RACE (FAILURE TO PROMOTE)

74. Mr. Golaub re-alleges and re-affirms the allegations contained in paragraphs 1 through 41 as if fully set forth herein.

75. Mr. Golaub is Black, and he is therefore a member of a protected class.

76. The FCRA outlaws employment discrimination because of "race, color, religion, sex, or national origin."

77. CDK treated Mr. Golaub adversely by failing to promote Mr. Golaub and denying him equal opportunities to earn the same income as his similarly situated White counterparts as outlined above.

78. Mr. Golaub was qualified for the RSE position as he served as an ASE for nine (9) years, earned above quota, led his team to be a top team in the company for many years, and both Mr. Verity and Mr. Heniff interviewed Mr. Golaub for the RSE role and agreed he was qualified.

79. CDK knew or should have known of the racial discrimination perpetuated and condoned against Mr. Golaub and failed to take prompt, adequate and remedial action or took no action at all to prevent the unlawful abuses to Mr. Golaub, including hiring Mr. Floro, who is White and was less qualified than Mr. Golaub.

80. CDK knowingly condoned and ratified the discrimination.

81. The discrimination complained of herein, affected a term, condition, or privilege of Mr. Golaub's continued employment with CDK.

82. CDK's conduct and failures constitute intentional discrimination and unlawful employment practices based on race in violation of the laws applicable to this action.

83. As a direct and proximate result of CDK's conduct described herein, Mr. Golaub has suffered emotional distress, mental pain and suffering, past and future pecuniary losses, inconvenience, mental anguish, loss of enjoyment of life and other non-pecuniary losses, along with lost back and front pay, interest on pay, benefits, bonuses, commissions, and other tangible and intangible damages. These damages occurred in the past yet are permanent and continuing.

## COUNT V – VIOLATION OF 42 U.S.C. §1981
## DISCRIMINATION ON THE BASIS OF RACE

84. Mr. Golaub re-alleges and re-affirms the allegations contained in paragraphs 1 through 41 as if fully set forth herein.

85. This is an action against CDK for failing to promote Mr. Golaub and discriminating against him based upon race brought under Section 1981.

86. Mr. Golaub is Black, and he is therefore a member of a protected class on the basis of his race.

87. Mr. Golaub, in all respects, was performing his job in a manner that was consistent with CDK's legitimate business expectations.

88. CDK intentionally discriminated against Mr. Golaub on the basis of his race, as outlined above, including but not limited to, denying him equal opportunities to earn the same income as his similarly situated White counterparts and denying him a promotion as race was the motivating factor in CDK's decisions.

89. But-for Mr. Golaub's race as a Black man, CDK would have promoted him to the RSE position and would have offered him equal opportunities to earn the same income as similarly situated White employees.

90. Mr. Golaub was qualified for the position as he served as an ASE for nine (9) years, earned above quota, led his team to be a top team in the company for many years, and both Mr. Verity and Mr. Heniff interviewed Mr. Golaub for the RSE role and agreed he was qualified.

91. Further, there was no justification in assigning Mr. Golaub less lucrative accounts than his similarly situated White colleagues other than race, which was a motivating factor in that decision.

92. The discrimination to which Mr. Golaub was subjected was severe, pervasive, and sufficient to alter the terms and conditions of his employment with CDK.

93. CDK is directly liable for the treatment towards Mr. Golub because its employees, Mr. Verity and Mr. Heniff, created and facilitated the discrimination by denying him financial opportunities similar to his White colleagues and failing to promote him because of his race.

94. The discrimination complained of herein affected the terms, conditions, and privileges of Mr. Golaub's employment.

95. CDK's conduct and failures constitute intentional race-based discrimination and unlawful employment practices based on race in violation of Section 1981.

96. As a direct and proximate result of CDK's conduct and Mr. Golaub's race as a Black man, including the unlawful employment practices described herein and the disregard for Mr. Golaub's rights and sensibilities, Mr. Golaub has suffered emotional distress, mental pain and suffering, past and future pecuniary losses, inconvenience, mental anguish, loss of enjoyment of

life and other non-pecuniary losses, along with lost back and front pay, interest on pay, benefits, bonuses, commissions, and other tangible and intangible damages. These damages occurred in the past yet are permanent and continuing.

97. Because CDK's actions were taken with malice and willful and wanton disregard of Mr. Golaub's protected rights, Mr. Golaub is entitled to punitive damages.

98. Mr. Golaub is also entitled to an award of costs and attorney fees pursuant to 42 U.S.C. §1988.

### Prayer for Relief

WHEREFORE, Mr. Golaub prays for the following relief:

(a) This Court take jurisdiction over this case.

(b) This Court grant equitable relief against CDK under the applicable counts set forth above, mandating CDK's compliance with the laws enumerated herein and providing other equitable relief to Mr. Golaub.

(c) The Court enter judgment against CDK and in favor of Mr. Golaub awarding him damages, including, but not limited to back pay, front pay, compensatory damages, and punitive damages, from CDK for its violations of the law as stated herein as well as interest.

(d) This Court enter judgment against CDK and in favor of Mr. Golaub permanently enjoining CDK from future violations of the laws stated herein.

(e) This Court enter judgment against CDK and in favor of Mr. Golaub awarding Mr. Golaub his attorneys' fees and costs.

(f) This Court grant all such further relief as deemed just and proper under the circumstances.

## **DEMAND FOR JURY TRIAL**

Mr. Golaub demands a trial by jury against CDK on all issues so triable.

Respectfully submitted this 9th day of September 2024.

    BECKER & POLIAKOFF, P.A.
*Attorney for Plaintiff*
625 N. Flagler Drive, 7th Floor
West Palm Beach, FL 33401
Telephone: (561) 820-2890
Facsimile: (305) 832-8987
jdokovna@beckerlawyers.com
ksilverberg@beckerlawyers.com
bmichenfelder@beckerlawyers.com
cdoyle@beckerlawyers.com
CourtMail@beckerlawyers.com


By: /s/ Jamie B. Dokovna
    Jamie B. Dokovna, Esq.
    Florida Bar No. 592722
    Kaitlyn N. Silverberg, Esq.
    Florida Bar No. 1025751